IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Jesse Edmond, | ) | C/A No.: 1:08-3288-GRA-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Jon E. Ozmint, Colie Rushton, Leroy Cartledge, Joyce L. Young, and Jennifer Franklin, each in their individual capacities, | ) | |
| Defendants. | ) | |

Plaintiff, who is proceeding *pro se* in this action, alleges his constitutional rights have been violated and brings this action pursuant to 28 U.S.C. § 1983. Before the court is Defendants' Motion for Summary Judgment [Entry #71]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment is dispositive, this Report and Recommendation is entered for review by the district judge.

I.     Factual and Procedural Background

Plaintiff's verified complaint, dated June 27, 2008, was filed in state court on August 11, 2008. Defendants removed the matter to this court on September 25, 2009, and filed their motion for summary judgment on November 16, 2009. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond

adequately to Defendants' motion. [Entry #72]. Plaintiff filed a response in opposition to Defendants' motion [Entry #79] on December 18, 2009.

Plaintiff's complaint alleges that on December 20, 2006, and June 27, 2008, Defendants prevented him from sending clearly-marked outgoing legal mail. (Compl. ¶ 15–16). Plaintiff also generally alleges Defendants have "[a]t other times" prevented him from sending legal mail, and asserts various constitutional and state law violations based on these allegations. (*See generally*, Compl.)

Having carefully considered the parties' submissions and the record in this case, the court recommends granting Defendants' motion for summary judgment.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific

facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-323.

III.   Analysis

A.   Denial of Access to Courts

Plaintiff claims that on two separate occasions, and "[a]t other times," he has been prevented from sending clearly marked legal mail. Plaintiff's complaint does not specify how he was prevented from accessing the courts via mail, but Defendants assert Plaintiff was denied additional postage on these occasions for failure to comply with mailing procedure. Defs.' Br. at 2. Specifically, Defendants assert, and Plaintiff does not dispute, that Plaintiff was allowed to mail his December 20, 2006, correspondence once he

complied with policy. (*Id.*) Defendants further assert, and Plaintiff does not dispute, that Plaintiff was denied postage on June 27, 2008 for refusing to open the item to allow the mailroom staff to inspect the documents to ensure it was legal mail. (*Id.*) In his response to Defendants' motion, Plaintiff alleges that the SCDC mail policy is unconstitutional in itself.

It is well-settled that prison administrators must provide inmates with adequate access to the courts, and that such access includes sufficient postage for indigent inmates. *See generally, Bounds v. Smith*, 430 U.S. 817 (1977). However, "[i]t is well settled that '[p]risoners do not have an unlimited right to free postage in connection with the right of access to the courts. Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations.'" *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (citing *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir. 1978)).

Plaintiff appears to attack the SCDC's mail policy in general. The United States Supreme Court has held that "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). In assessing the constitutionality of a prison policy or regulation, the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. The burden of proof under the *Turner* analysis is not on the governmental entity; the burden is on the prisoner to disprove the validity of the prison regulations at issue. *Overton*, 539 U.S. at 132. In applying the *Turner* factors, the

Supreme Court further directed that "[w]e must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them. *Overton*, 539 U.S. at 132. .

Here, SCDC has created a policy that seeks to balance the need of providing indigent inmates with sufficient postage to access the courts, with the financial burden and budgetary concerns associated with the abuse of the indigent inmate mail system by prisoners. *See* Young Aff. [Entry #71-2]. Indigent inmates are given an allotment of stamped envelopes each month that they may use to mail out items, either legal or non-legal in nature. (*Id.*) If an indigent inmate requires additional postage to mail out legal mail, the inmate will be provided that postage, but first must show that he or she has an on-going lawsuit or is seeking to commence a lawsuit. (*Id.*) In order to prevent inmates from abusing the indigent mail system, the item of mail may be inspected to ensure it is actually legal mail. (*Id.*) The SCDC staff does not actually read the item of mail, but scans the mail to determine that it is in fact legal in nature. (*Id.*)

Plaintiff has failed to demonstrate that the SCDC's legal mail policy is unconstitutional. It balances the right of inmates to court access with the legitimate penological interest of reducing abuses of the indigent mail system causing budgetary concerns. Therefore, Defendants are entitled to summary judgment.

B.  Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless,

*assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

C.   State Law Claims

Plaintiff also makes claims under South Carolina state law. Having found Defendants are entitled to summary judgment regarding Plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief pursuant to state law. *See* 28 U.S.C. § 1367(c).

IV.   Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #71] be granted.

IT IS SO RECOMMENDED.

July 26, 2010
Florence, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**