UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Jesse Edmond, ) | |
| ) | C/A No.: 1:08-cv-3288-GRA |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | (Written Opinion) |
| Jon E. Ozmint, Colie Rushton, Leroy ) | |
| Cartledge, Joyce L. Young, and ) | |
| Jennifer Franklin, each in their ) | |
| individual capacities, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter comes before the Court to review Magistrate Judge Shiva V. Hodges' Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., filed on July 26, 2010. The magistrate recommends that this Court grant Defendants' Motion for Summary Judgment and decline supplemental jurisdiction over Plaintiff's state law claims. For the reasons stated herein, this Court adopts the magistrate's recommendations.

**Background**

Plaintiff is an indigent inmate in the custody of the South Carolina Department of Corrections (SCDC) and is housed at McCormick Correctional Institution (MCI). Plaintiff alleges that, on two occasions, he was denied free postage to mail legal documents. First, on December 20, 2006, he attempted to mail documents to the Commission on Civil Rights in Washington, D.C. Second, on June 27, 2008, he

attempted to mail a proposed summons and complaint to the Clerk of Court for the United States District Court for the District of Columbia. At the time of these incidents, SCDC had in effect a written policy providing that indigent inmates could not send legal mail to out-of-state recipients unless the mail either related to a pending legal matter or the recipient was an attorney licensed to practice in South Carolina.

Plaintiff filed this action on August 8, 2008, pursuant to 42 U.S.C. § 1983 and South Carolina law. Defendants moved for summary judgment on Plaintiff's federal law claims on November 16, 2009, alleging there was no issue of material fact and that summary judgment should be granted as to Plaintiff's claim that Defendants prevented him from sending outgoing legal mail, thereby denying him his right of access to the courts. The magistrate recommended granting Defendants' motion in her July 26, 2010 Report and Recommendation. Plaintiff filed objections to the report on August 12, 2010.

## **Standard of Review**

Plaintiff brings this claim *pro se.* This Court is required to construe *pro se* pleadings liberally. Such pleadings are held to a less stringent standard than those drafted by attorneys. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). This Court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam). However, a district court is

not required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985).

The magistrate makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.*

In order for objections to be considered by a United States District Judge, the objections must specifically identify the portions of the Report and Recommendation to which the party objects and the basis for the objections. Fed. R. Civ. P. 72(b); *see also Wright v. Collins*, 766 F.2d 841, 845–47 nn.1–3 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 n.4 (4th Cir. 1984). "Courts have . . . held *de novo* review to be unnecessary in . . . situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Furthermore, in the absence of specific objections to

the Report and Recommendation, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

## **Discussion**

The Court first reiterates that it may only consider non-conclusory objections to the Report and Recommendation that direct this Court to a specific error. Most of Plaintiff's "objections" generally reference the magistrate's Report and Recommendation and do not adequately address errors in the magistrate's proposed findings. Virtually the entire document rehashes Plaintiff's initial argument before the magistrate or restates the alleged facts of the case. These issues were correctly addressed by the magistrate and this Court will not address the issues a second time.

To the extent Plaintiff raises cognizable and specific objections to the magistrate's Report and Recommendation, those objections are addressed below.

### A. Weighing of the Evidence

The magistrate concluded that Plaintiff failed to demonstrate a violation of the Constitution, that Plaintiff failed to establish any theory of liability against Defendants, and that, in any event, Defendants are entitled to qualified immunity. (Mag.'s Rep. and Rec. at 3–5, ECF No. 94.) In several objections, Plaintiff asserts that the magistrate's conclusions are improperly based on genuine issues of material fact. (*See* Pl.'s Objection at 2–5, ECF. No. 96.)

Summary judgment is appropriate where the admissible evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Williams v. Staples, Inc.* 372 F.3d 662, 667 (4th Cir. 2004) (citing Fed. R. Civ. P. 56(c)). The Court must view the facts in the light most favorable to the party opposing summary judgment, and it may not make credibility determinations or weigh the evidence. *Id.* (citing *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002)). However, an issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Plaintiff argues that there are a number of disputed material facts and that the magistrate weighed evidence and credibility, adopting Defendants' version of the facts and rejecting Plaintiffs' contradictory evidence. However, Plaintiff's objections are without merit, as they concern immaterial issues of fact. As discussed below, even under Plaintiff's version of the facts, Defendants are still entitled to summary judgment.

### 1. Absence of an Actual Injury

It is well-settled that prisoners have a constitutional right of access to the courts. *See generally Bounds v. Smith*, 430 U.S. 817 (1977). However, a prisoner must show some actual injury resulting from a denial of access in order to allege a

constitutional violation. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Accordingly, an inmate claiming denial of access to the courts must identify an actual, prejudicial injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citing *Strickler v. Waters*, 989 F.2d 1375, 1382–85 (4th Cir. 1993)). The inmate must demonstrate that the denial of access caused, for example, the late filing of a court document or the dismissal of an otherwise meritorious claim. *Lewis*, 518 U.S. at 353–54. "A showing of injury is required in order to avoid adjudication of trivial claims of deprivation." *Cochran*, 73 F.3d at 1317.

Plaintiff contends that he was denied postage on December 20, 2006, and June 27, 2008, because of SCDC's outgoing prisoner mail policies. SCDC Policy GA-01.03 §17.2 (Inmate Access to the Courts) provides as follows:

> An indigent inmate . . . who wishes to send legal mail outside the state of South Carolina must show the Postal Director/Mailroom Supervisor or designee that: s/he is a party of an action in another state; or the attorney to whom s/he intends to send mail is licensed to practice law in South Carolina.

(Ex. H-8 to Pl.'s Mem. in Opp., ECF No. 80-2.) Plaintiff addressed both mailings to recipients in Washington, D.C., but neither mailing met the criteria for out-of-state mail under Section 17.2. Therefore, Plaintiff argues, SCDC's policy wrongfully denied him access to the courts because it unjustifiably limited his ability to send legal mail to out-of-state recipients. However, Plaintiff has failed to allege, let alone demonstrate with competent evidence, that Defendants, acting under SCDC's policy, caused him any actual injury.

Regarding the first attempted mailing, it is undisputed that this mail reached its intended destination, even if the parties disagree as to how it got there.[1] Thus, even assuming *arguendo* that sending mail to the Commission on Civil Rights falls within the ambit of the constitutional right of access to the courts, Plaintiff has not shown any actual injury with regard to this mailing.

The second mailing was a lawsuit that Plaintiff wished to file in the United States District Court for the District of Columbia. However, the proposed complaint alleged that numerous state and federal officials in South Carolina conspired against Plaintiff during his criminal trial in Oconee County, and he asserted causes of action under both federal and South Carolina law. Clearly, Plaintiff could have filed suit in South Carolina, thus avoiding the restrictions of policy GA-01.03.[2] Therefore, enforcement of the policy caused Plaintiff no actual injury.

As nothing before this Court demonstrates that Defendants caused Plaintiff an actual injury to his right of access to the courts, Plaintiff's claims fail, and his objections are therefore without merit.

---

[1] Defendants assert that Plaintiff was allowed to send the mail through SCDC's mail system. (Defs.' Mem. In Supp. 2, ECF No. 71-1.) Plaintiff states that he smuggled the mail out of prison. (Pl.'s Objection 2, 3, ECF. No. 96.)

[2] Indeed, Plaintiff's present action against Defendants demonstrates that the policy does not prevent Plaintiff from initiating new lawsuits against South Carolina residents for events occurring in this state.

## 2. Failure to Exhaust Administrative Remedies

Additionally, with regard to Plaintiff's attempted mailing of June 27, 2008, Plaintiff's action is barred for failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act (PLRA). *See* 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and not the [PLRA], that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that the plaintiff failed to exhaust his administrative

remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005).

SCDC policy provides a three-step grievance process.[3] First, an inmate must attempt to resolve his complaint informally. (Aff. of Ida Culbreath ¶ 4, ECF No. 71-6.) Next, he may file a "Step 1 Grievance" with designated prison staff. (*Id.* ¶ 5.) Finally, if the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." (*Id.* ¶ 7.) If, at the institutional level, the response to the grievance exceeds the established time limits, the grievance

---

[3]The Court takes judicial notice of the SCDC grievance process, specifically SCDC Policy GA-01.12. As noted in *Jones v. Kay*, No. 4:07-3480, 2007 WL 4292416, at *5 (D.S.C. Dec. 5, 2007), the time limits of this policy are summarized as follows:

> (1) an inmate must submit a Step 1 Grievance form within fifteen (15) days of the alleged incident;
>
> (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;
>
> (3) the Warden should respond to the grievant in writing within forty (40) days;
>
> (4) the inmate may appeal by submitting Step 2 Grievance to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and
>
> (5) a responsible SCDC official has sixty (60) days to respond to the Step 2 Grievance, plus five (5) days for the grievant to be served.

*See* SCDC Policy GA-01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.*

automatically proceeds to the next level of appeal. *See* SCDC Policy GA-01.12 § 13.6. Thus, a SCDC prisoner must wait approximately 114 days between presenting his Step 1 Grievance to the prison and filing a civil action. *Malik v. Ward*, No. 8:08-cv-1886-RBH, 2010 WL 936777, at *3 (D.S.C. Mar. 16, 2010); *see also* SCDC Policy GA-01.12.

Defendants assert that Plaintiff never filed a grievance regarding the June 27, 2008 incident. In support of this position, Defendants submitted the affidavit of Ida Culbreath, an Inmate Grievance Coordinator at MCI. Ms. Culbreath reviewed Plaintiff's grievance history and found no documentation regarding the incident. (Aff. of Ida Culbreath ¶¶ 9, 11.) In response, Plaintiff avers that on the day of the incident, he filed a Step1 Grievance that was never answered. (Aff. of Jesse Edmond ¶¶ 33–34, ECF No. 79-3.) Plaintiff has also submitted a copy of a Step 1 Grievance form dated June 27, 2008, that discusses the incident of that date. (*See* ECF No. 79-7.)

Even when viewed in the light most favorable to Plaintiff, the evidence shows that, at most, Plaintiff *began* to exercise his administrative remedies, but did not *exhaust* them. Plaintiff commenced this action in state court on August 11, 2008, 46 days after the incident. (*See* Compl., ECF. No. 1-1.) However, as noted in *Malik*, a grievant who received no response must wait 114 days from the filing of his Step 1 Grievance to file a civil action. As Plaintiff did not do so, he failed to first exhaust his administrative remedies as required under PLRA. Therefore, Plaintiff's claim

regarding the June 27, 2008 incident fails as a matter of law, and Plaintiff's objections are without merit.

**B.     The Magistrate's "Characterizations" of Plaintiff's Claims**

In his second and sixth objections, Plaintiff objects to the magistrate stating that Plaintiff's claim is an "attack" on the constitutionality of the South Carolina Department of Corrections' (SCDC) inmate mail policy and that the essence of Plaintiff's allegations is that "Defendants prevented him from sending clearly-marked outgoing legal mail." (*See* Mag.'s Rep. and Rec. at 2, 4.) These "characterizations" had no bearing on the magistrate's recommendation. The magistrate analyzed Plaintiff's claim as one for denial of access to the courts (*see id.* at 3–5), which is precisely how Plaintiff styles his claim (*see* Pl.'s Objection 1–2). Moreover, in his sixth objection, Plaintiff himself states that his lawsuit is an "attack upon the Inmate Access [t]o [t]he Courts policy." (Pl.'s Objection 3.) The magistrate committed no error, and Plaintiff's objections are without merit.

**C.     Lack of Specificity**

Plaintiff next objects to the magistrate's statement that Plaintiff did not specify how he was prevented from accessing the courts via mail. In response, Plaintiff points out that in Paragraph 23 of his Complaint, he states that Defendants cut off his access by denying him postage. (*See* Pl.'s Objection 2.)

Although Plaintiff is technically correct, in that he did, in fact, allege a manner in which he was denied court access, his point is ultimately irrelevant.

Defendants do not dispute that Plaintiff was denied additional postage, and the Report and Recommendation clearly indicates that the magistrate considered these denials of postage in her analysis. (*See* Mag.'s Rep. and Rec. at 3–5.) That the magistrate did not credit Plaintiff providing the specific basis for his claim had no bearing on the magistrate's analysis. Accordingly, Plaintiff's objection is without merit.

After a thorough review of the magistrate's Report and Recommendation, applicable case law, and the record, this Court finds that the magistrate applied sound legal principles to the facts of this case. Therefore, this Court adopts the Report and Recommendation in its entirety.

Having concluded that summary judgment for Defendants is appropriate as to Plaintiff's federal law claims, this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

IT IS THEREFORE ORDERED THAT Defendants' Motion for Summary Judgment is GRANTED and that Plaintiff's remaining state law claims are REMANDED to the Court of Common Pleas for McCormick County.

**IT IS SO ORDERED.**

_____
G. Ross Anderson, Jr.
Senior United States District Judge

August 26, 2010
Anderson, South Carolina

**NOTICE OF RIGHT TO APPEAL**

Pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, Plaintiff has the right to appeal this Order within thirty (30) days from the date of its entry. Failure to meet this deadline, as modified by Rule 4 of the Federal Rules of Appellate Procedure, **will waive the right to appeal.**